**Exhibit A**

**AFFIDAVIT OF JOHN J. McDONNELL**

I, John J. McDonnell, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Drug Enforcement Administration (the "DEA") and have been so employed since August 1998. During the course of my employment with the DEA, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

2. In addition to my training, I have had extensive experience in the investigation of the activities of narcotics traffickers. Since joining the DEA, I have participated in numerous narcotics investigations as a case agent and in a subsidiary role. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge about narcotics trafficking activities and the operation of narcotics trafficking organizations. I have personally participated in several aspects of narcotics trafficking investigations, including conducting surveillance, using confidential informants, and conducting court-authorized interceptions of wire and electronic communications.

3. Based upon my training and experience, I am familiar with narcotics traffickers' methods of operation, including the distribution, storage, and the transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. Specifically, I am familiar with the manner in which narcotics traffickers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute narcotics and the proceeds of narcotics trafficking. I also am familiar with the manner

in which narcotics traffickers use telephones, coded, veiled, or slang-filled telephone conversations, pagers, coded pager messages, and other means to facilitate their illegal activities. I am also familiar with the vernacular or street-names for drugs and drug proceeds used by customers and distributors of controlled substances and the methods by which such persons attempt to disguise the subjects of their conversations and operations.

4. I submit this affidavit in support of a Complaint for Forfeiture *in Rem* that seeks forfeiture of the following:

   a. $426,000 in United States currency seized on August 31, 2012 from Jennifer Medina and Alex Tejeda in Foxboro, Massachusetts (the "Defendant Currency"); and

   b. one 2009 Audi Q7 bearing serial number WA1AY74L59D012798 and Massachusetts registration number WDL196 seized on August 31, 2012 (the "Audi")

5. This affidavit is based upon my personal knowledge, as well as information provided to me by law enforcement personnel from DEA and the Massachusetts State Police (the "MSP") involved in the investigation, and my review of records and reports relating to the investigation. This affidavit is submitted for the limited purpose of establishing probable cause for forfeiture of the Defendant Currency, therefore, I have not included every fact known to me or other law enforcement officers concerning this investigation.

6. As set forth below, I have probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846. In addition, I have probable cause to believe that the Audi is subject to forfeiture to the United States pursuant to 21

2

U.S.C. § 881(a)(4) because it was a vehicle used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of drugs in connection with violation of 21 U.S.C. §§ 841 and/or 846.

## The Investigation

7.  On August 31, 2012 at approximately 2:30 p.m., MSP Trooper Michael Tryon ("Trooper Tryon") pulled over an Audi Q7 SUV, bearing Louisiana registration WDL196 (*i.e.*, the Audi) on Interstate 95 southbound near Exit 6 in Foxoboro, Massachusetts for following too closely. The driver of the Audi was Jennifer Medina ("Medina") and Alex Tejeda ("Tejeda") was a passenger in the Audi. Medina was the registered owner of the Audi.

8.  After the stop MSP Trooper Shawn Cayer and his K-9 Britta responded to the scene. Britta retired from service in November of 2012 after six years as a certified K-9. Britta is a Sable German Shepherd and at the time of the stop had New England State Police Administrators Conference certification for the detection of narcotic odors of marijuana, cocaine, heroin, and methamphetamine. At the time of the stop Britta had previously detected narcotics, and currency with narcotic odor, in other criminal investigations.

9.  Britta conducted a scan of the Audi, and alerted to the exterior of the vehicle indicating the presence of narcotic odor. After the positive alert by Britta, the Audi was towed to the MSP Barracks in Foxboro to safely conduct a further investigation.

10. Medina and Tejeda were advised that they were free to leave and would be safely transported off the highway, or they could be transported to the MSP Barracks in Foxboro.

11. Medina and Tejeda said that they wanted to be transported to the MSP Barracks, and were then given a courtesy ride to the Barracks by a MSP unit. After they arrived at the MSP Barracks, Medina and Tejeda said that they wanted to walk to the Dunkin Donuts a short distance

away. Prior to leaving the Barracks, Medina gave Trooper Tryon a contact phone number.

12. Further inspection of the Audi at the MSP Barracks revealed two after-market compartments located on the under carriage of the vehicle. The compartments ran along the rocker panels of the driver and passenger side of the Audi. The compartments were each assessable via trapdoors located under the vehicle in the area of the front seats.

13. Inside the two after-market compartments were 34 bundles of United States currency wrapped in green plastic wrap, dryer sheets and rubber bands. This currency was later counted and totaled $426,000 (*i.e.*, the Defendant Currency). The bundles were further banded into stacks that included denominations of $5, $10, $20, $50 and $100 bills.

14. Based on my training and experience as a Special Agent with the DEA, I know that drug transactions are cash transactions and that those involved with the illegal narcotics business may carry significant amounts of cash. In addition, drug traffickers may also install after-market hidden compartments in vehicles to aid in the undetected transport of drugs and drug proceeds. Further, it is common for drug traffickers to package drugs and drug proceeds with materials that may help to mask the odor of narcotics, such as plastic wrap or dryer sheets.

15. After law enforcement found the Defendant Currency, Trooper Tryon contacted Medina using the phone number she provided. Trooper Tryon informed Medina of the discovery of the currency and requested that she return to the MSP Barracks to sign a currency seizure receipt for the money. Medina told Trooper Tryon that she knew nothing about the currency, that she would not be returning to the MSP Barracks, and that she did not want to sign for a receipt for the seized currency. Trooper Tryon told Medina that the investigation would be on-going and that her vehicle would be held for potential forfeiture proceedings. Medina said that she understood and the call then ended.

## Conclusion

16.     Based upon the information set forth above, I have probable cause to believe that the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, or proceeds traceable to such an exchange, or moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and/or 846. In addition, I have probable cause to believe that the Audi is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(4) because it was a vehicle used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of drugs in connection with violation of 21 U.S.C. §§ 841 and/or 846.

Signed under the penalties of perjury this 15th day of March 2013.

John J. McDonnell
Special Agent, United States Drug
Enforcement Administration

*Christine Lunney*

Notary Public State of Florida
Christine Lunney
My Commission EE007823
Expires 09/19/2014